IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOSES LEE SMITH, aka TYRE SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 14-5753 |
| DEPUTY WARDEN ROGER BOLAVA; | : | |
| DR. K. DEDANIA (PrimeCare); | : | |
| ST. LUKE'S HOSPITAL; | : | |
| DR. DAVID KNEAL; | : | |
| DR. NATE KALTESKI; and | : | |
| RN EMELIA CAPUTO, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                                                   May 20, 2015

Moses Lee Smith, formerly an inmate at Northampton County Prison in Easton, Pennsylvania, filed a *pro se* second amended complaint against the prison's deputy warden, four members of its medical staff, and the nearby hospital where he was taken for treatment. Read liberally, this third effort by plaintiff to file a meritorious complaint alleges that Smith was deprived of medical care, cared for negligently, poisoned, and wrongly placed on suicide watch. All but one of the defendants filed motions to dismiss, arguing that Smith is barred from raising claims of medical malpractice and that he has failed to state any constitutional claims. I agree, and accordingly I will grant the motions and dismiss plaintiff's claims.

**I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY**[1]

In February 2011, Moses Lee Smith was an inmate at Northampton County Prison ("NCP") when Doctor David Neal gave him a drug that caused him to have an allergic reaction.[2]

---

[1] This account accepts as true all factual allegations made in plaintiff's second amended complaint (Doc. No. 8). *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

Second Am. Compl. ("SAC") at 3. For 48 hours thereafter, Smith was denied medical care by Nurse Emilia Caputo. *Id.* At the time, both Neal and Caputo worked for PrimeCare Medical, the prison's outside medical provider.[3] *Id.*

Smith further alleges that on March 29, 2013, he was poisoned by the staff at NCP and subsequently taken to St. Luke's Hospital. *Id.* Through medical neglect by Neal and/or Caputo, Smith contracted lichen planus.[4] *Id.* Lichen planus is "a condition that forms an itchy rash on the skin or in the mouth." *See* U.S. National Library of Medicine, *Lichen planus*, MedlinePlus (Nov. 20, 2012), http://www.nlm.nih.gov/medlineplus/ency/article/000867.htm. This condition, in turn, derived from hepatitis caused by the "gross medical practice" of PrimeCare. SAC at 3. Smith alleges that steroids are required to treat his skin condition, but that they have not been administered because they may damage his only remaining kidney. *Id.* at 4.

At some point thereafter, Smith was placed on suicide watch at the direction of Doctor Kishorkumar Dedania and NCP deputy warden Roger Bolava. *Id.* at 3. Smith claims he then suffered from cruel and unusual punishment at two other prisons, SCI Graterford and SCI Camp Hill.[5] *Id.* At the former, Smith was denied access to prescription medicine; at the latter, he was again placed on suicide watch and forced to take unwanted medication. *Id.*

---

[2] Neal is identified as "Kneal" in the caption and body of the second amended complaint.

[3] "In evaluating a motion to dismiss, [the court] may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation and internal quotation marks omitted). It is a matter of public record that "PrimeCare is an outside company retained by Northampton County to provide medical care to inmates." *Torres v. Prime Care Med, Inc.*, No. CIV.A. 12-2358, 2012 WL 4352993, at *1 n.1 (E.D. Pa. Sept. 24, 2012).

[4] Smith states that "[t]hrough medical neglect by the above mention I had contracted 'Lichen Planus' which derived from Hepatitis through gross medical practice by Prime Care Medical." SAC at 3. In context, "the above mention" could refer to Neal, Caputo, or both.

[5] Neither prison nor any of their officials or employees remain as defendants in this action at this time.

Smith filed his original complaint and a motion to proceed *in forma pauperis* on October 10, 2014.  The motion was denied on October 14, 2014.  Smith then filed a petition to proceed *in forma pauperis* on October 20, 2014, which I granted on October 28, 2014.  Smith filed a first amended complaint on November 5, 2014 and a second amended complaint on December 15, 2014.  By order on December 29, 2014, I dismissed as frivolous Smith's claims against SCI Graterford and SCI Camp Hill.  Defendant Bolava filed a motion to dismiss under Rule 12(b)(6) on January 9, 2015.  Smith responded on January 20, 2015.  Defendants Dedania, Neal, Kalteski, and Caputo moved to dismiss on February 27, 2015.  Smith responded on March 12, 2015.[6]

## II.    STANDARD OF REVIEW

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  The issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 563 n.8 (2007) (internal quotation marks omitted).

In conducting this review, a court must accept all "well-pleaded" facts in the complaint as true.  *Fowler,* 578 F.3d at 211.  This assumption of truth does not, however, apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause

---

[6] There is no indication on the docket that defendant St. Luke's Hospital was ever served in this matter.  Moreover, Smith pleads no facts about St. Luke's Hospital other than alleging that he was "rushed" there on or after March 29, 2013.  *See* SAC at 3.  Accordingly, plaintiff's claims against St. Luke's Hospital will also be dismissed.

of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. At the same time, the pleadings of *pro se* plaintiffs must be "liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

## III. DISCUSSION

Smith's allegations focus on four incidents. First, he claims that in February 2011, Neal gave him a drug that caused an allergic reaction, and that Caputo denied him medical care for 48 hours thereafter. Second, he claims that he was poisoned by the staff at NCP on March 29, 2013. Third, he claims he contracted lichen planus, derived from hepatitis, as a result of medical neglect and "gross medical practice." Fourth, he claims that Bolava and Dedania wrongly placed him on suicide watch. Smith does not specify whether these incidents amount to violations of his constitutional rights or medical malpractice. I will therefore discuss each incident in turn and—construing the pleadings liberally—consider the claims that Smith could be raising.[7]

### A. Allergic Reaction & Lack of Care

Smith asserts that Neal provided him a drug that caused an allergic reaction in February 2011, and that Caputo subsequently denied him medical care for 48 hours. This allegation can most readily be interpreted as giving rise to a claim of medical malpractice under Pennsylvania law. The state's Rules of Civil Procedure, however, require that a plaintiff claiming medical malpractice "shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit." Pa.R.C.P. No. 1042.3. This requirement is designed "to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." *Womer v. Hilliker*, 908 A.2d 269, 275 (Pa. 2006). The Third Circuit has held, in an unpublished opinion, the reasoning of which I find persuasive, that "Rule 1042.3 is a substantive state law that federal

---

[7] I note that Smith does not refer to defendant Kalteski at all in the body of the second amended complaint and he will, therefore, be dismissed as a party to this action.

district courts must apply." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008) (per curiam) (nonprecedential). Consequently, "If a plaintiff does not comply with Rule 1042.3, the claims will be dismissed . . . [unless] the plaintiff can show a 'reasonable excuse' for the noncompliance." *Id.* (quoting *Womer*, 908 A.2d at 279-80). The Third Circuit further clarified that "a pro se litigant's ignorance of or mistaken assumptions about the requirements of Rule 1042.3 cannot serve as a reasonable excuse." *Id.* at 75 (citing *Hoover v. Davila*, 862 A.2d 591, 595-96 (Pa. Super. Ct. 2004)).

Smith did not file a certificate of merit, let alone within sixty days of filing his original complaint, and his explanation for not doing so does not suffice: he asserts that he was "unfamiliar with a certificate of merit." *See* Doc. No. 19 at 1. The usual consequence of failing to file a certificate of merit is dismissal of the claim without prejudice. *Booker v. United States*, 366 F. App'x 425, 427 (3d Cir. 2010) (per curiam) (nonprecedential). But where the statute of limitations has run on the malpractice claim, failure to file a certificate of merit is "fatal to the plaintiff's suit" and it should be dismissed with prejudice. *Id.* (citing *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 249 (E.D. Pa. 2008)). Pennsylvania's statute of limitations on medical malpractice claims is two years, 42 Pa. Cons. Stat. Ann. § 5524(7), and this incident occurred in February 2011—more than three years before Smith's initial filing in this case. *See* Doc. No. 1 (entered Oct. 10, 2014). I will therefore dismiss with prejudice Smith's claim of malpractice against Neal and Caputo.[8]

It is also possible to view the pleadings as asserting an Eighth Amendment claim against Neal and Caputo, arising under 42 U.S.C. § 1983. Because prisoners have a right to medical care

---

[8] I further note that Smith fails to plead any of the elements of a prima facie case of malpractice: "(1) a duty owed by the physician to the patient (2) a breach of duty from the physician to the patient (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct result of that harm." *Thierfelder v. Wolfert*, 52 A.3d 1251, 1264 (Pa. 2012).

5

under the Eighth Amendment, and because inmates must rely on prison officials for such care, denial of treatment can result in pain and suffering that rises to the level of a constitutional violation. *Estelle*, 429 U.S. at 103. However, the Supreme Court has made it clear that failure to provide adequate medical care is a violation of the Eighth Amendment only when it results from "deliberate indifference to serious medical needs." *Id.* at 106. Thus, to state a claim under the Eighth Amendment, Smith needs to show first that his medical needs were serious and second that Neal and Caputo were deliberately indifferent to those needs.

For the purposes of the Eighth Amendment, a medical need is considered serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotation marks omitted). Here, there is no allegation as to whether Smith's allergic reaction was serious. But even assuming that it was, Smith has failed to plead any facts that would satisfy the deliberate indifference prong. The Supreme Court has held that deliberate indifference is found where a defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Moreover, the scienter required for deliberate indifference in this context is subjective recklessness: the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the [defendant] must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). There is no allegation that Neal intended to provide Smith with less than optimal treatment, or that Caputo intended to withhold care from Smith, let alone

6

that either did so with knowledge of and disregard to an excessive risk to his health or safety. Smith has thus failed to state a plausible Eighth Amendment claim against Neal or Caputo.

### B. Poisoning

Smith asserts that he was poisoned by the staff at NCP on March 29, 2013. He does not specify how he was poisoned, who in particular poisoned him, what poison it was, or whether the poisoning was deliberate, negligent, or purely accidental.[9] Despite these gaps, the allegation could perhaps be construed as his attempt to state an Eighth Amendment claim, likewise under § 1983. Again, making out such a claim requires showing at least deliberate indifference on the part of defendants. Plaintiff fails to meet this burden: Smith does not claim that any of the NCP staff "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety" with respect to the alleged poisoning. *Id.* To the extent that Smith is attempting to state a claim against Bolava in his official capacity as deputy warden, Smith would need to comport with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, a municipality or its employee in his official capacity can be found liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Smith has not pleaded that his poisoning resulted from a policy or custom at NCP, so he has failed to make out such a claim.

### C. Hepatitis & Lichen Planus

Smith asserts that while he was incarcerated at NCP, he contracted hepatitis, and that this disease in turn developed into a condition called lichen planus. He claims that the hepatitis resulted from "gross medical practice" by PrimeCare and that the lichen planus arose out of

---

[9] In an earlier lawsuit, Smith alleged that he was poisoned by way of NCP's water supply. *Smith v. Buskirk*, No. CIV.A. 12-4259, 2015 WL 328238 (E.D. Pa. Jan. 22, 2015). The court entered judgment against Smith on his Eighth Amendment claim, noting that the cause of his alleged injury was "a matter of pure conjecture." *Id.* at *6.

"medical neglect" by Neal and/or Caputo. SAC at 3. I note at the outset that PrimeCare is not a named defendant in this action, so only the "medical neglect" claim is properly before the court.

The assertion of "medical neglect" could, on one hand, be seen as a state law claim of medical malpractice against Neal and Caputo. Again, filing a certificate of merit is required to bring such a claim in Pennsylvania, and Smith has not done so, so the claim must be dismissed. *Perez*, 304 F. App'x at 74. Moreover, Smith has failed to plead the elements necessary to make out a prima facie case of malpractice against Neal or Caputo. *Thierfelder*, 52 A.3d at 1264.

On the other hand, the "medical neglect" could be viewed as his attempt to state to another Eighth Amendment denial of care claim. To make out such a claim, Smith must plausibly allege that Neal or Caputo showed "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 103. Defendants do not dispute that lichen planus amounts to a serious medical condition so, for the purposes of this motion, I will assume that to be the case. But as before, Smith has not pleaded sufficient facts to show deliberate indifference on the part of Neal or Caputo. Indeed, Smith alleges that his lichen planus was caused by the "medical neglect" of Neal or Caputo, but the Supreme Court has made it clear that "deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835. Smith has therefore failed to make out an Eighth Amendment claim related to his suffering from lichen planus.

### D. Suicide Watch

Finally, Smith asserts that "[u]nder the direct order of Deputy Warden Roger Bolava and Dr. K. Dedania, [he] was placed on Suicide Level I, in[]spite of [the] Hypocritical Oath." SAC at 3. This allegation can again be construed as his attempt to bring another Eighth Amendment claim, given that Smith's statement can best be interpreted as asserting a violation of the

Hippocratic Oath, in which doctors traditionally pledge to "do no harm."[10]  Again, Smith would need to show deliberate indifference to a serious medical need to make out such a claim.

The pleadings do not meet this burden.  The Third Circuit has held that a prisoner's "particular vulnerability to suicide represents a serious medical need."  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005).  Indeed, the court recently clarified that "appropriate suicide-preventive measures are a required component of the Constitution's command that prison administrators provide adequate mental and physical health care for inmates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 329 (3d Cir. 2014).  A doctor's decision to place a prisoner on suicide watch is therefore a medical decision, and "mere disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation."  *Lanzaro*, 834 F.2d at 346.  Smith does not allege, by contrast, that Dedania made this decision "solely to inflict pain and for no valid medical purpose," which could give rise to an Eighth Amendment claim.  *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990).  Because Smith has not pleaded any facts about such a culpable state of mind, he has failed to state a plausible Eighth Amendment claim against Dedania.

As to Bolava, the Third Circuit has instructed that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Here, Smith has alleged that the decision to place him on suicide watch was made by Bolava and Dedania, and it is undisputed that Dedania is a doctor and Bolava is not.  Moreover, Smith has not alleged that Bolava knew or had reason to believe that Dedania was mistreating Smith by

---

[10] *See* U.S. National Library of Medicine, *Greek Medicine*, History of Medicine Division (Feb. 7, 2012), http://www.nlm.nih.gov/hmd/greek/greek_oath.html.

placing him on suicide watch.  Therefore, an Eighth Amendment claim cannot be sustained against Bolava.

### IV.    CONCLUSION

For the reasons set forth above, I will grant defendants' motions to dismiss.  Because this is plaintiff's third effort to file a complaint that states a plausible claim for relief, the dismissal will be with prejudice.  *See, e.g.*, *Mann v. Brenner*, 375 F. App'x 232, 240 n.9 (3d Cir. 2010) (nonprecedential) (affirming the dismissal of a second amended complaint with prejudice where "allowing [plaintiff] a fourth bite at the apple would be futile").  An appropriate order follows.